THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| FOUR CORNERS HEALTH CARE CORP., a Utah corporation,<br><br>                Plaintiff,<br><br>v.<br><br>ROOTS HOME HEALTH CARE INC., a New Mexico corporation; JANE AND JOHN DOES 1-10; and DOE BUSINESS ENTITIES 1-10,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [11] MOTION TO DISMISS**<br><br>Case No. 4:21-cv-00037-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Four Corners Health Care Corp. ("Four Corners") brings this action against Defendant Roots Home Health Care Inc. ("Roots"),[1] alleging Roots has engaged in unfair practices and tortious interference with Four Corners' economic relations ("Complaint").[2] Roots filed a motion to dismiss for lack of personal jurisdiction.[3] Four Corners filed an Opposition[4] to the Motion, and Roots filed a Reply.[5] Because Four Corners has alleged sufficient minimum contacts to make a prima facie showing of personal jurisdiction, and exercising specific jurisdiction over Roots will not offend traditional notions of fair play and substantial justice, Roots' Motion is DENIED.

---

[1] Four Corners voluntarily dismissed the other named defendant, Kendrick Goldtooth, so any arguments in the parties' briefing involving Mr. Goldtooth need not be addressed. *See* Notice of Voluntary Dismissal of Defendant Kendrick Goldtooth, docket no. 15, filed Jun. 23, 2021.

[2] Complaint and Jury Demand ("Complaint") ¶¶ 25–28 at 5–7, docket no. 2, filed Apr. 6, 2021.

[3] Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") at 1, docket no. 11, filed May 19, 2021.

[4] Memorandum in Opposition to Motion to Dismiss ("Opposition") at 2, docket no. 16, filed Jun. 23, 2021.

[5] Defendant Roots Home Health Care Inc.'s Reply Memorandum in Support of Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Reply"), docket no. 19, filed Jul. 14, 2021.

**Table of Contents**

Background ............................................................................................................................. 2
Standard of Review ............................................................................................................... 4
Discussion .............................................................................................................................. 5
      Members of a reservation are residents of the state they reside in for purposes of
           jurisdiction ............................................................................................................... 6
      Tribal court comity is inapplicable ................................................................................. 7
      General personal jurisdiction is lacking .......................................................................... 9
      Specific personal jurisdiction is proper ........................................................................... 9
           Roots has sufficient minimum contacts to justify specific jurisdiction ................ 10
           Personal jurisdiction over Roots does not offend traditional notions of fair play
                and substantial justice ..................................................................... 13
Conclusion .......................................................................................................................... 16
Order ................................................................................................................................... 17

## BACKGROUND

Four Corners is a Utah corporation[6] engaged in the business of providing home health care services to beneficiaries of certain federal programs.[7] Roots is a New Mexico corporation that also provides home health care services to beneficiaries of the same federal programs as Four Corners.[8]

Four Corners alleges that Roots has tortiously interfered with Four Corners' economic relations and prospective economic relations in Utah,[9] Arizona,[10] and New Mexico,[11] and that Roots has violated Utah's Unfair Practices Act.[12]

Four Corners' specific allegations in its Complaint regarding Roots' activities in Utah include the following:

---

[6] Complaint ¶ 1 at 2; Motion at 2.

[7] Complaint ¶ 10 at 3; Motion at 2.

[8] Complaint ¶¶ 2, 22 at 2, 6; Motion at 2.

[9] Complaint ¶¶ 30–38 at 8–9.

[10] Complaint ¶¶ 39–47 at 9–10.

[11] Complaint ¶¶ 48–56 at 10–11.

[12] Complaint ¶¶ 57–62 at 11–12.

2

- Roots is "subject to the personal jurisdiction of this [c]ourt because [Roots has] sufficient minimum contacts with the State of Utah, including by seeking to treat and actually treating home health care patients and paying home health aides within the state of Utah."[13]

- Roots has "engaged in several schemes in violation of the federal Anti-Kickback Statute in order to poach Four Corners' patients . . . in . . . Utah."[14]

- "As a direct result of the conduct described above,[15] Roots has successfully poached multiple Four Corners' patients in 2019, 2020 and 2021, including patients in Utah . . ."[16]

Roots has five patients that reside on Navajo reservation land within the state of Utah,[17] and one nurse and eleven employees that provide services to those patients on the reservation.[18] Three of these five patients transferred from Four Corners, representing injuries of at least $240,000 to Four Corners.[19][20]

---

[13] Complaint ¶ 7 at 2 (emphasis added).

[14] Complaint ¶ 25 at 6.

[15] Four Corners alleges Roots has "sought to compete with Four Corners" through seven different forms of illegal conduct, each alleged in a separate paragraph. Complaint ¶¶ 28, 28a–g at 6–7.

[16] Complaint ¶ 29.

[17] *See infra* at 6–7, discussing Roots argument that because these patients reside on reservation land, they are not subject to personal jurisdiction by Utah courts.

[18] Motion at 5; Opposition at 2, 5; *see also* Exhibit A: Declaration of Jared Foutz in Support of Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Foutz Decl.") ¶ 8 at 3, docket no. 11-1, filed May 19, 2021.

[19] Declaration of Travis Shumway in Support of Memorandum in Opposition to Motion to Dismiss ("Shumway Decl.") ¶¶ 2–3 at 2, docket no. 16-1, filed Jun. 23, 2021; *see also* Foutz Decl. ¶ 8 at 3.

[20] Roots asserts in its Motion: "[O]nly *three* of Defendants' patients who live on Navajo reservation land adjacent to Utah transferred from Four Corners. Thus, the injury Four Corners complains of—indeed over $400,000 worth—could not have resulted from Defendants' forum-related activities (of which there are none)." Motion at 17–8. Four Corners takes this statement as an admission by Roots that Roots' activities on the reservation land in Utah are about $400,000. Opposition at 2, 10. Roots does not deny Four Corners' interpretation in its Reply. However, the more likely interpretation of Roots' assertion is that the transfer of only three patients is a small number, and so the damage to Four Corners is also small, and will only constitute a small portion of the $400,000+ damages Four Corners alleges. Therefore, because Roots did not deny Four Corners' estimate of $240,000 damages from the three patients that transferred, on this motion the minimum amount of damages allegedly caused by Roots' business activities in Utah is $240,000. In any event, the amount of damages is not a key consideration in evaluating the sufficiency of minimum contacts.

In response to Four Corners' Complaint, Roots filed its Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Motion").[21]

## STANDARD OF REVIEW

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists."[22] And, as in this case, when there is no evidentiary hearing and the motion to dismiss is supported by affidavits and other written material, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."[23] "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."[24]

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[25]

Utah's long-arm statute[26] "confers jurisdiction to the fullest extent permitted by the due process clause of the Fourteenth Amendment[.]"[27] Thus, the analysis required for personal jurisdiction "collapses here into a single due-process inquiry."[28] "For a court to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of

---

[21] Docket no. 11, filed May 19, 2021.

[22] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004) (citation omitted).

[23] *Id.* (citation omitted).

[24] Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008).

[25] *Benton*, 375 F.3d at 1075 (citation omitted).

[26] Utah Code Ann. § 78B-3-201(3).

[27] *XMission L.C. v. Fluent L.L.C.*, 955 F.3d 833, 839 (10th Cir. 2020) (quotation marks and citation omitted).

[28] *Id.* (citation omitted).

fair play and substantial justice.'"[29] "That is, the contacts with the forum state must be such that the defendant 'should reasonably anticipate being haled into court there.'"[30]

The minimum contacts standard that enables personal jurisdiction can be obtained through either general jurisdiction or specific jurisdiction.[31]

## DISCUSSION

Roots argues it does not have sufficient minimum contacts with Utah for personal jurisdiction because any contacts it does have are on Navajo reservation land, which it claims is separate and distinct from Utah.[32] Roots also argues that even if Four Corners could establish minimum contacts, concerns of comity require a dismissal.[33][34] Both arguments are invalid and will be discussed in turn.

Four Corners argues that Roots is subject to both general and specific jurisdiction. Four Corners alleges that Roots successfully poached some of Four Corners' patients because of Roots alleged illegal conduct, some of which occurred in Utah, resulting in a significant loss of

---

[29] *Id.* (citations omitted).

[30] *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[31] *Id.* at 840.

[32] Motion at 9–18.

[33] Motion at 19–20.

[34] Roots argues in its Reply that Four Corners does not adequately plead with precision which activities in its Complaint were aimed specifically at Utah. *See* Reply at 5–7. "Reply memoranda must be limited to rebuttal of matters raised in the opposition memoranda." DUCivR 7-1(b)(2)(C) Arguments raised for the first time in a reply brief are not ordinarily considered. *See Deseret Tr. Co. v. Unique Inv. Corp.*, No. 2:17-CV-00569, 2018 WL 8110959 (D. Utah July 3, 2018). It is clear, however, that Four Corners has alleged facts sufficient to exercise specific jurisdiction over Roots. "Plaintiff's burden is light in the early stages of litigation before discovery," and "[t]he Court accepts as true all well-pleaded facts (that are plausible, non-conclusory, and non-speculative) alleged by Plaintiff *unless Defendant controverts those facts by affidavit.*" *Strobel v. Rusch*, 364 F. Supp. 3d 1270, 1278 (D.N.M. 2019). Because Roots has failed to controvert Four Corners' allegations of jurisdiction as explained herein, Roots argument in its Reply also fails for that reason.

revenue for Four Corners.[35] While Four Corners cannot establish general jurisdiction over Roots, it has alleged sufficient facts for specific jurisdiction over Roots.

### Members of a reservation are residents of the state they reside in for purposes of jurisdiction

Roots argues that it does not operate in Utah; does not provide services to individuals living in Utah; does not employ Utah residents; does not target advertising or marketing to Utah residents; and that none of its revenue comes from Utah.[36] However, these assertions are based on Roots' assumption that persons living or working on Navajo reservation land located within the state of Utah must *not also* be considered as residing or working within Utah, and so they cannot be considered contacts with Utah. Roots describes the relevant reservation land where the employees work and the patients reside as being "adjacent to Utah."[37] Four Corners argues that the employees work and the patients reside on reservation land *within the state of Utah*.[38] Roots does not directly contradict this statement, which it could easily do by asserting that the patients live, and the employees work, within the boundaries of the reservation in the states of New Mexico or Arizona. Instead, Roots maintains that the five patients reside "on reservation lands adjacent to Utah."[39] It is clear that the employees work, and the patients reside, *within the border of Utah*, on reservation land.

---

[35] Complaint ¶¶ 29, 38 at 7, 9.

[36] Motion at 5; Foutz Decl. ¶¶ 9–10 at 3. Roots also makes other assertions, including but not limited to, that it is not registered to do business in Utah, that it doesn't have a Home Health license from Utah for its work on the Navajo reservation, and that it has no physical location or address in Utah. Motion at 5. These factors do not preclude finding sufficient minimum contacts with Utah for the court to have personal jurisdiction over Roots.

[37] Motion at 5–6, 14, 17; Foutz Decl. ¶¶ 7–9 at 3.

[38] Opposition at 2, ¶¶ 9–11 at 5.

[39] Motion at 14, n. 66.

"[U]nder the Fourteenth Amendment, Indians are citizens of the states in which they reside."[40] There is no relevant law pertaining to personal jurisdiction that says otherwise. The employees and patients of Roots working and living on tribal land are therefore also working and living within the state of Utah. By statute, the "state of Utah hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory."[41] Further, "[t]he civil laws of the state shall have the same force and effect within these lands as they have elsewhere within the state, except as otherwise provided by this chapter."[42] Because these individuals are residing within the state of Utah, the analysis regarding personal jurisdiction and minimum contacts does not change simply because these individuals happen to also live on tribal land.[43]

### Tribal court comity is inapplicable

The principle of comity requires a federal court "to stay its hand in order to give the tribal courts a full opportunity to determine its own jurisdiction."[44] This principle applies for the "[p]romotion of tribal self-government and self-determination,"[45] but does not apply to the two non-Indian parties in this action.

In *Smith v. Moffett*,[46] the Tenth Circuit vacated the District Court's decision to grant the defendants' motion to dismiss Smith's § 1983 civil rights action in the interest of comity. The

---

[40] *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 18 n.10 (1987).

[41] Utah Code Ann. § 9-9-201.

[42] Utah Code Ann. § 9-9-205. The exceptions provided in Chapter 9 of Title 9 do not include the laws Four Corners alleges Roots has violated, *see* Utah Code Ann. § 9-9-101 *et seq*.

[43] If Roots' argument that activities on a reservation can never be considered contacts with the state where the reservation is geographically located for purposes of personal jurisdiction were accepted, this would create pockets of immunity throughout the country, such that businesses incorporated in other states could conduct business on reservation land in a different state, and those activities could not be regulated by courts in the state where the activity occurs (unless the business accepts personal jurisdiction by such court). This potential outcome is another reason Roots argument must fail.

[44] *Iowa Mut. Ins. Co.*, 480 U.S. at 16 (quotation marks and citation omitted).

[45] *Id.* at 15.

[46] 947 F.2d 442 (10th Cir. 1991).

Tenth Circuit explained that there were tribal defendants, Smith was Navajo, and it was unclear whether Smith had exhausted his tribal remedies.[47] The Tenth Circuit held that the comity concerns in *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*[48] and *Iowa Mut. Ins. Co. v. LaPlante*[49] were present in *Smith*. The Tenth Circuit further stated "the fact that *some* of the parties in Smith's case are non-Indians is immaterial to this analysis."[50]

Both *Nat'l Farmers* and *LaPlante* involved civil suits that began in tribal courts by tribal members against non-Indian defendants.[51] When the defendants filed suit in federal district court, the U.S. Supreme Court ultimately held that the defendants had to wait until tribal court remedies had been exhausted before filing any action in district court.[52]

In this case, *none* of the parties are tribal members. Roots has not alleged it is a tribal corporation. No tribal laws are involved. No action has been filed in the Navajo Tribal Court.[53]

Instead, this action concerns two non-tribal companies litigating over alleged tortious interference with economic relations and unfair business practices. This court need not defer to the Navajo Nation to determine jurisdiction over these parties and therefore can proceed in this case.

---

[47] *Id.*

[48] 471 U.S. 845 (1985).

[49] 480 U.S. 9 (1987).

[50] *Smith*, 947 F.2d at 444 (emphasis added).

[51] *See Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9 (1987).

[52] *Id.*

[53] While "courts have held comity to be a concern even when a case filed in federal court has not yet been filed in tribal court[,]" *Smith,* 947 F.2d at 444, both Four Corners and Roots are non-tribal companies, so comity is inapplicable in this case.

### General personal jurisdiction is lacking

Four Corners has failed to demonstrate that Utah has general jurisdiction over Roots. General jurisdiction requires a person to have continuous and systematic contacts with the forum state such that "the person is essentially at home in the State."[54] The "paradigmatic examples" of being "at home" for a corporation are the "the place of incorporation and principal place of business."[55] "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts."[56]

Four Corners asserts that Roots is subject to general jurisdiction because they have eleven employees and one nurse residing in Utah who provide 24-hour care to Roots' Utah patients.[57] Four Corners argues this is sufficient to prove continuous and systematic contacts. However, the standard for general jurisdiction is much higher than the standard for specific jurisdiction, and Roots' employees and patients who reside in Utah are not enough to render Roots "at home" in Utah. Roots is "at home" in New Mexico. Its place of incorporation is New Mexico.[58] Because Four Corners cannot show that Roots meets the paradigmatic bases of general jurisdiction, general jurisdiction is not present.

### Specific personal jurisdiction is proper

Four Corners has established a prima facie showing of minimum contacts for purposes of specific jurisdiction. Specific jurisdiction "allows a court to exercise jurisdiction over an out-of-

---

[54] *XMission L.C.*, 955 F.3d at 840 (citation omitted).

[55] *H.A. Folsom & Assoc's. v. Capel*, No. 2:16-cv-00160-DN, 2016 WL 4435210 at *5 (D. Utah Aug. 19, 2016).

[56] *Benton*, 375 F.3d at 1080 (citation omitted).

[57] Opposition at 10.

[58] Motion at 2; Complaint ¶ 2 at 2.

state defendant only for claims related to the defendant's contacts with the forum State."[59] "Specific jurisdiction is proper if (1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'"[60] Exercising specific jurisdiction must also not offend traditional notions of fair play and substantial justice.[61]

**Roots has sufficient minimum contacts to justify specific jurisdiction**

The first requirement for finding minimum contacts sufficient for specific jurisdiction concerns a party's purposeful direction of its activities in the forum state.[62] "Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefiting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."[63] Roots was purposefully directing its conduct to Utah residents by working in Utah and obtaining patients in Utah. Purposeful direction requires that a defendant have "deliberately… engaged in significant activities within the forum State or deliberately directed its activities at the forum State[.]"[64] "Purposeful direction is a product of both the quantity and quality of a defendant's contacts with the forum."[65] The complaint alleges that Roots deliberately engaged in significant activities in Utah and deliberately directed its activities at Utah; Roots' employees and patients were not in Utah by accident. Roots has one nurse and eleven employees working in Utah and has admitted to at least

---

[59] *XMission L.C.*, 955 F.3d at 840 (citation omitted).

[60] *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[61] *Benton*, 375 F.3d at 1075.

[62] *See XMission L.C.*, 955 F.3d at 840.

[63] *Id.* at 840 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).

[64] *Id.* (quotation marks and citation omitted).

[65] *Id.* (citation omitted).

three Utah patients switching from Four Corners to Roots.[66] Four Corners alleges that it has been damaged by about $240,000 in annual revenue because these patients switched to Roots.[67] This dollar amount constitutes over half of Four Corners' alleged overall damages in this action and meets the "quantity and quality" aspect of the analysis.

The purposeful direction requirement "ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts[.]"[68] Roots' contacts with Utah–its employees and patients, are not results of random, fortuitous, or attenuated contacts. Roots deliberately and successfully sought out business in Utah[69] and thus suffers no surprise from being haled into court in Utah.

In *Benton v. Cameco Corp.*,[70] the defendant company sent representatives to the forum state (Colorado) in order to maintain and further business relationships by conducting a due diligence review and negotiating a contract with the plaintiff.[71] The Tenth Circuit held that "parties who reach out beyond one State and create continuing relationships and obligations with citizens of another State are subject to regulation and sanctions in the other State for the consequences of their activities."[72] Cameco knew Benton was located in Colorado and by

---

[66] Motion at 5; Foutz Decl. ¶ 8 at 3. While Roots argues that they are not Utah patients because they live on reservation land, see *supra* at 6–7 establishing that these patients are within the state of Utah, and so are considered contacts with Utah for purposes of jurisdiction.

[67] *See supra* n. 20.

[68] *XMission L.C.*, 955 F.3d at 840 (citation omitted).

[69] "Roots is a home health care company providing needed medical services to individuals in New Mexico and Arizona, *as well as to tribal members living on Indian reservation lands.*" Motion at 1.

[70] 375 F.3d 1070 (10th Cir. 2004).

[71] *Benton*, 375 F.3d at 1077.

[72] *Id.* (citation omitted).

sending Cameco employees there to perform due diligence, they demonstrated their willingness to engage in business with the forum state.[73]

Roots has even more meaningful and consistent contacts than Cameco did in *Benton*. Roots maintains employees and patients in Utah which provides them with regular business; this is more than just a due diligence review. Roots' regular contacts with patients in Utah demonstrates their willingness to engage with potential patients in Utah, and therefore Roots is subject to Utah's regulations and sanctions, including jurisdiction.

The second requirement for specific jurisdiction depends on whether "the plaintiff's alleged injuries 'arise out of or relate to those activities[]'" that are purposefully directed at the forum state.[74] The claim must have arisen out of or resulted "from actions by the defendant *himself* that create a substantial connection with the forum state."[75] The defendant's conduct is what must form "the necessary connection" with the forum state.[76] The claims being made against Roots are directly related to, and arise from, Roots' contacts with the state. Four Corners' claims allege that Roots is conducting unlawful competition practices and has poached some of Four Corners' Utah patients.

Roots has purposefully directed significant activities toward residents living in Utah, and Four Corners' injuries are directly related to Roots' deliberate interactions with Utah residents. Therefore, Roots has sufficient minimum contacts with Utah to make specific jurisdiction appropriate.

---

[73] *Id.* at 1078.

[74] *XMission L.C.*, 955 F.3d at 840 (citation omitted).

[75] *Benton*, 375 F.3d at 1076 (quotation marks and citation omitted).

[76] *XMission*, 955 F.3d at 847 (citation omitted).

**Personal jurisdiction over Roots does not offend traditional notions of fair play and substantial justice**

The analysis for granting specific jurisdiction does not end with a finding of sufficient minimum contacts. "[T]he defendant can defeat jurisdiction by presenting a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[77] Stated differently, "we inquire 'whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case."[78] If found unreasonable, this offends "traditional notions of fair play and substantial justice"[79] and therefore renders personal jurisdiction improper.

For example, in *Benton*, the Tenth Circuit held that while there were sufficient contacts to warrant specific jurisdiction, an exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.[80] The defendant in *Benton* was a Canadian company being sued in Colorado, where it had no employees, and Canadian law governed the dispute. The record showed far more witnesses were in Canada than in Colorado. Because of those factors, and the finding that Canadian policy interests were affected, the burden on Cameco was found to be enough to make jurisdiction unreasonable even though Cameco had sufficient minimum contacts with Colorado.[81]

Courts assess unreasonableness "by considering (1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient

---

[77] *Id.* at 840 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

[78] *Benton*, 375 F.3d at 1078 (citation omitted).

[79] *Id.*

[80] *Id.* at 1079.

[81] *Id.* at 1079–80.

resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies."[82] It is not unreasonable for the court to exercise personal jurisdiction over Roots.

First, "the burden on the defendant" is "of primary concern."[83] Roots is based in New Mexico but has both employees working and patients residing in southern Utah, which borders New Mexico. If Roots can manage to conduct regular business in Utah, they can surely be present in court in the Southern Region of Utah[84] without it being burdensome enough to prohibit personal jurisdiction.

Second, Utah has an interest in resolving the dispute because "[t]he state's interest is . . . implicated where resolution of the dispute requires a general application of the forum state's laws."[85] Four Corners is a Utah company alleging that Roots is violating the Utah Unfair Practices Act.[86] Utah certainly has an interest in providing a forum for its residents to "seek redress for injuries caused by out-of-state actors."[87]

Third, and similar to the analysis above, Four Corners has an interest in convenient and effective relief by litigating its two Utah state law claims[88] in Utah. Four Corners does also allege a cause of action based on New Mexico law.[89] Neither party has addressed the difference

---

[82] *XMission L.C.*, 955 F.3d at 840 (quotation marks and citation omitted).

[83] *Benton*, 375 F.3d at 1079.

[84] Trials and hearings for cases in the Southern Region of Utah may be held in St. George, Utah, and special sessions may be held in Southeastern Utah. *See* https://www.utd.uscourts.gov/southern-region-district-utah (last visited Aug. 25, 2021).

[85] *Benton*, 375 F.3d at 1079 (citation omitted).

[86] Complaint ¶ 58 at 11; *see also* Utah Code Ann. § 13-5-1 *et seq.*

[87] *Benton*, 375 F.3d at 1079 (citation omitted).

[88] Complaint ¶¶ 30–38, 57–62 at 8–9 and 11–12.

[89] Complaint ¶¶ 48–56 at 10–11.

in relief that would be provided under Utah versus New Mexico law, so this factor does not weigh heavily either way in the analysis.

Fourth, the analysis requires deciding "whether the forum state is the most efficient place to litigate the dispute."[90] Utah is certainly an efficient forum to litigate the dispute. Again, New Mexico and Utah share a border and Roots routinely does business in Utah. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[91] Witnesses for Four Corners presumptively reside in Utah. Roots says its witnesses are located in New Mexico,[92] in close proximity to Utah. The patients and employees living and working on reservation land are potential witnesses and are located in Utah. Four Corners has a claim alleging that Roots violated the Utah Unfair Practices Act and granting jurisdiction in Utah would help prevent partial measures being taken by state courts in New Mexico, Utah, and possibly Arizona.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations."[93] This case does not involve any international parties. Neither party has made an argument about any substantive social policy interests of another state that may be affected by the exercise of personal jurisdiction over Roots by Utah. Therefore, this factor does not weigh heavily in the analysis.

"[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of

---

[90] *Benton*, 375 F.3d at 1080 (citation omitted).

[91] *Id.* (citation omitted).

[92] Motion at 18.

[93] *Benton*, 375 F.3d at 1080 (citation omitted).

unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]."[94]

The analysis here for minimum contacts and the analysis for reasonableness bolster the other. Four Corners has established a prima facie showing of minimum contacts, and Roots has not demonstrated that submitting to specific jurisdiction would be unreasonable. Thus, specific jurisdiction is proper.

No other arguments opposing jurisdiction have substance which would change the outcome, so they need not be addressed.

## CONCLUSION

Through the allegations in its Complaint, its Opposition and supporting declaration,[95] Four Corners has met the burden of showing that this court has personal jurisdiction over Roots. Because Four Corners has alleged sufficient minimum contacts with Roots and exercising jurisdiction over Roots does not offend traditional notions of fair play and substantial justice, specific jurisdiction over Roots is proper. Roots Motion must be denied.

---

[94] *Id.* (citation omitted).

[95] Shumway Decl.

**ORDER**

IT IS HEREBY ORDERED that Roots' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction[96] is DENIED.

IT IS FURTHER ORDERED that, based on DUCivR 7-1(f) and the sufficiency of the parties' memoranda for a decision without a hearing, Roots' request for oral argument[97] is also DENIED.

Signed August 26, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[96] Docket no. 11, filed May 19, 2021

[97] Reply at 11.